# UNITED STATES DISTRICT COURT
# DISTRICT OF MARYLAND

ALAN BUCK,

    Plaintiff,

v.

CARLOS DEL TORO, *Secretary of the Navy, United States Department of the Navy,*

    Defendant.

Civil Action No. TDC-18-3289

## MEMORANDUM OPINION

Self-represented Plaintiff Alan Buck filed this civil action against the Secretary of the Navy ("the Navy") in which he has alleged that he was subjected to unlawful discrimination on the basis of race and age in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e–2000e-17 (2018), and the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. §§ 621-634 (2018), while working at the Navy Recreation Center Solomons Island ("NRC Solomons") in Solomons Island, Maryland. Pending before the Court is the Navy's Motion to Dismiss, or in the Alternative, for Summary Judgment, which is fully briefed. Having reviewed the submitted materials, the Court finds that no hearing is necessary. *See* D. Md. Local R. 105.6. For the reasons set forth below, the Navy's Motion will be DENIED. To the extent that Buck's Memorandum in Opposition may be construed as a Cross Motion for Summary Judgment, it will also be DENIED.

## BACKGROUND

### I. NRC Solomons Employment

Alan Buck, who is Black and who was 51 years old at the time of the hiring decision at issue in this case, began working at NRC Solomons in 2003 and obtained a position as a flexible

maintenance worker in 2007, for which his duties consisted of general maintenance work, including carpentry, roof work, and electrical repair, as well as painting and glass cutting. "Flexible employees" are "[e]mployees who serve in either continuing or temporary (time limited) positions, on a scheduled or unscheduled (as needed or intermittent) basis, up to 40 hours per week." Joint Record ("J.R.") 289, ECF No. 34. "Flexible employees are not eligible to participate in . . . benefit programs, nor are they entitled to earn or use leave including military leave, court leave, sick or annual leave." *Id.* At the time of the relevant hiring decision in 2013, Buck's supervisors included Maintenance Supervisor Ed Buser, who is White and was 54 years old, and Site Director Carrie Rose, who is White and was 39 years old. Between 2007 and 2013, during his time as a flexible maintenance worker, Buck received at least four employee performance ratings of "highly satisfactory" or "outstanding," the two highest rating levels. J.R. 384-87. Prior to the hiring decision at issue in this case, Buck applied for two other full-time positions at NRC Solomons and was unsuccessful on both occasions.

## II. The Hiring Decision

In January 2011, Rose became the Site Director at NRC Solomons and began to administer the selection process for filling vacancies at the facility. On September 18, 2012, NRC Solomons issued a vacancy announcement for a full-time maintenance worker position, Vacancy Announcement No. M-20512. Buck submitted his application for the position on December 5, 2012. Following the submission of written applications, the NRC Solomons Human Resources Office reviewed them and ranked applicants based on the criteria for the position, ultimately providing the hiring panel with a list of vetted candidates for the interview stage of the process. From the initial pool of candidates, seven candidates were deemed qualified and four were invited for interviews, including Buck; his co-worker, Sean Lowthert; Michael Johnson; and the eventual

2

selectee, Chad Conn—a White man under 40 years old who had not previously worked at NRC Solomons. The interview panel consisted of Rose, Buser, and Naval Air Station Patuxent River Unaccompanied Housing Site Manager Adryll Ferguson, who is Black and was 40 years old at that time.

According to Rose, the final selection of Conn for the full-time maintenance worker position was "based upon the rating and ranking scores of the interview questions" and was "signed off on by all 3 panel members." J.R. 16. All four candidates were asked the same ten questions during their interviews, which covered topics including the candidate's prior training and experience, availability to work outdoors and on certain shifts, and knowledge of the process for completing certain maintenance tasks, including repairing a hole in a wall, fixing a leaky faucet, and installing a door. Upon completion of an interview, Rose, Buser, and Ferguson completed a ranking sheet by individually scoring the candidate's response to each question, and the scores were added to achieve a total score for each of the four candidates.

Although Buck and Conn were both interviewed on December 20, 2012, Buck interviewed in person, while Conn was allowed to interview over the telephone. Conn received the highest final score, 138 points, while Buck received the third highest, 112 points. Conn was offered the job on January 7, 2013 and accepted the offer on January 8, 2013. Buck was notified of his non-selection on January 11, 2013.

### III. Procedural History

On May 28, 2013, Buck filed an Equal Employment Opportunity ("EEO") complaint with the Navy relating to his non-selection for the full-time maintenance worker position. On November 30, 2016, following a hearing, an administrative judge of the United States Equal Employment Opportunity Commission ("EEOC") issued a bench decision in favor of the Navy.

3

After the Navy issued a final agency order implementing that decision, Buck appealed that order to the EEOC, which affirmed the Navy's final order on March 28, 2018.

On October 24, 2018, Buck filed his Complaint in this Court. Construed liberally, the Complaint asserts claims of (1) intentional discrimination on the basis of race and age in the failure to promote, in violation of Title VII and the ADEA; and (2) race and age discrimination based the disparate impact of the use of an employment practice in the selection process "that had nothing to do with [the] job," specifically focusing on written and verbal abilities, in violation of Title VII and the ADEA. *See* Compl. at 6, ECF No. 1; Request for Reconsideration of Decision at 2-3, Compl. Ex. 2, ECF No. 1-2.

## DISCUSSION

In its Motion to Dismiss or, in the Alternative, for Summary Judgment, the Navy argues that the Complaint should be dismissed under Federal Rule of Civil Procedure 12(b)(6) because Buck has failed to state a *prima facie* case of discrimination under Title VII or the ADEA and cannot otherwise state a plausible claim for relief, and that based on the record evidence from the administrative proceedings, it is entitled to summary judgment under Rule 56 because Buck cannot demonstrate that the Navy's legitimate, non-discriminatory reason for his non-selection was a pretext for discrimination. In opposing the Motion, Buck argues that the facts establish that he is a member of a protected class, was qualified for the position to which he applied, and was subject to discrimination when he was passed over for promotion in favor of a younger White applicant; attaches documents that reference various instances of racially derogatory statements at NRC Solomon and identify certain alleged false statements and inconsistencies that arose during the hiring process; and requests that the Court deny the Navy's Motion and instead grant summary judgment in his favor.

4

I.  **Legal Standards**

A.  **Motion to Dismiss**

To defeat a motion to dismiss under Rule 12(b)(6), the complaint must allege enough facts to state a plausible claim for relief. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A claim is plausible when the facts pleaded allow "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* Legal conclusions or conclusory statements do not suffice. *Id.* A court must examine the complaint as a whole, consider the factual allegations in the complaint as true, and construe the factual allegations in the light most favorable to the plaintiff. *Albright v. Oliver*, 510 U.S. 266, 268 (1994); *Lambeth v. Bd. of Comm'rs of Davidson Cnty.*, 407 F.3d 266, 268 (4th Cir. 2005). A self-represented party's complaint must be construed liberally. *Erickson v. Pardus,* 551 U.S. 89, 94 (2007). However, "liberal construction does not mean overlooking the pleading requirements under the Federal Rules of Civil Procedure." *Bing v. Brivo Sys., LLC*, 959 F.3d 605, 618 (4th Cir. 2020).

B.  **Motion for Summary Judgment**

The Navy filed its Motion as a Motion to Dismiss or, in the Alternative, for Summary Judgment. Typically, when deciding a motion to dismiss under Rule 12(b)(6), the Court considers only the complaint and any attached documents "integral to the complaint." *Sec'y of State for Defence v. Trimble Navigation Ltd.*, 484 F.3d 700, 705 (4th Cir. 2007). Rule 12(d) requires courts to treat such a motion as a motion for summary judgment where matters outside the pleadings are considered and not excluded. Fed. R. Civ. P. 12(d). Before converting a motion to dismiss to one for summary judgment, courts must give the nonmoving party "a reasonable opportunity to present all the material that is pertinent to the motion." *Id.* "Reasonable opportunity" has two requirements: (1) the nonmoving party must have some notice that the court is treating the Rule

12(b)(6) motion as a motion for summary judgment, and (2) the nonmoving party "must be afforded a reasonable opportunity for discovery" to obtain information essential to oppose the motion. *Gay v. Wall*, 761 F.2d 175, 177 (4th Cir. 1985) (citation omitted).

Here, the notice requirement has been satisfied by the title of the Navy's Motion, and Buck has demonstrated that he received such notice by titling his response to the Motion an "Answer to Defendant's Request to Dismiss / Motion for Summary Judgment." Opp'n Mot. Summ. J. at 1, ECF No. 31. As for a reasonable opportunity for discovery, ordinarily "summary judgment should only be granted 'after adequate time for discovery.'" *McCray v. Maryland Dept. of Transp., Maryland Transit Admin.*, 741 F.3d 480, 483 (4th Cir. 2014) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986)). To show that a reasonable opportunity for discovery has not been afforded, the nonmoving party must file an affidavit or declaration under Rule 56(d), or another filing, explaining why "for specified reasons, it cannot present facts essential to justify its opposition." Fed. R. Civ. P. 56(d); *see Harrods Ltd. v. Sixty Internet Domain Names*, 302 F.3d 214, 245 (4th Cir. 2002). Here, even construed liberally, Buck's memorandum in opposition to the Motion does not contain a request for discovery. Rather, he attaches his own documents and records identifying certain relevant facts, and he asks for the Court to grant summary judgment in his favor. Under these circumstances, the Court may consider whether summary judgment should be granted in favor of either party at this time.

Under Federal Rule of Civil Procedure 56(a), the Court grants summary judgment if the moving party demonstrates that there is no genuine issue as to any material fact, and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). In assessing the Motion, the Court views the facts in the light most favorable to the nonmoving party, with all justifiable inferences drawn in its favor. *Anderson*

*v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). The Court may rely only on facts supported in the record, not simply assertions in the pleadings. *Bouchat v. Balt. Ravens Football Club, Inc.*, 346 F.3d 514, 522 (4th Cir. 2003). A fact is "material" if it "might affect the outcome of the suit under the governing law." *Anderson*, 477 U.S. at 248. A dispute of material fact is "genuine" only if sufficient evidence favoring the nonmoving party exists for the trier of fact to return a verdict for that party. *Id.* at 248-49. "When faced with cross-motions for summary judgment, the court must review each motion separately on its own merits 'to determine whether either of the parties deserves judgment as a matter of law.'" *Rossignol v. Voorhaar*, 316 F.3d 516, 523 (4th Cir. 2003) (quoting *Philip Morris, Inc. v. Harshbarger*, 122 F.3d 58, 62 n.4 (1st Cir. 1997)).

### C. Discrimination Claims

Title VII provides that "[i]t shall be an unlawful employment practice for an employer to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1). Under the ADEA, employers may not discriminate against individuals because of their age, specifically, being over 40 years of age. *See* 29 U.S.C. §§ 623(a)(1), 631(a). Both statutes require a plaintiff to establish a claim through one of two methods. The plaintiff may either demonstrate through direct or circumstantial evidence that the plaintiff's membership in a protected class "motivated the employer's adverse employment decision," or the plaintiff may proceed through the burden-shifting approach espoused in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). *See Hill v. Lockheed Martin Logistics Mgmt., Inc.*, 354 F.3d 277, 284 (4th Cir. 2004). Under the *McDonnell Douglas* framework, the employee must first establish a *prima facie* case of discrimination. *Hill*, 354 F.3d at 285. To establish a *prima facie* claim for race

7

discrimination based on non-selection or non-promotion, a plaintiff must show that: (1) the plaintiff is a member of a protected class; (2) the plaintiff applied for the position in question; (3) the plaintiff was qualified for the position; and (4) the plaintiff was rejected for the position under circumstances giving rise to an inference of unlawful discrimination, which includes when the position was filled by an applicant from outside the protected class. *Carter v. Ball*, 33 F.3d 450, 458 (4th Cir. 1994). The requirements for a *prima facie* case of discriminatory non-promotion under the ADEA are that (1) the plaintiff was a member of a protected class in that the plaintiff was at least 40 years old; (2) the employer had an open position for which the plaintiff applied and was qualified; (3) the plaintiff was rejected despite being qualified; and (4) the position remained open or was filled by "a similarly qualified applicant who was substantially younger than the plaintiff, whether within or outside the class protected by the ADEA." *Laber v. Harvey*, 438 F.3d 404, 430 (4th Cir. 2006).

If the plaintiff establishes a *prima facie* case successfully, the burden shifts to the employer to "articulate a legitimate, nondiscriminatory reason for the adverse employment action." *Hill*, 354 F.3d at 285. Finally, if such a showing is made, the burden shifts back to the plaintiff to prove "by a preponderance of the evidence that the employer's stated reasons were not its true reasons, but were a pretext for discrimination." *Id.*

## II. Motion to Dismiss

### A. Intentional Discrimination

The Navy first argues that the Complaint should be dismissed because the allegations fail to state a claim for race or age discrimination. Ordinarily, a motion to dismiss is denied if the plaintiff has stated a *prima facie* case of discrimination. *See, e.g., Parker v. North Carolina Dept. of Agric., Food & Drug Div.*, 39 F.3d 1178 (Table), 1994 WL 633474, at *1-2 (4th Cir. Nov. 14,

1994) (*per curiam*). Even so, a plaintiff need not specifically allege each element of a *prima facie* case of discrimination to withstand dismissal if the allegations in the complaint support a plausible claim of discrimination. *McCleary-Evans v. Md. Dep't of Transp.*, 780 F.3d 582, 584-85 (4th Cir. 2015); *see Buchanan v. Delta Air Lines, Inc.*, 727 F. App'x 639, 641 (11th Cir. 2018) (*per curiam*) (applying this rule in an ADEA case).

Construed liberally, as is required with a self-represented plaintiff, Buck's Complaint states a *prima facie* case. Buck has alleged that he is Black and was born in 1961, such that there can be no dispute that he is a member of protected classes for both race and age discrimination. Likewise, by stating that he "applied for [the] full time Maintenance position" and was not selected even though he "had already been doing" the job as a part-time worker for ten years and had "excellent performance evaluations," Buck adequately alleged that he applied for and was not hired for a position for which he was qualified. Compl. at 6. Finally, Buck satisfied the fourth prong—that the position was filled by someone outside the protected class—when he asserted that "the job was given to a younger White male," and that "[i]t was not fair" to select such an applicant in Buck's place on the basis of "skills that had nothing to do with" the position in question. *Id.*

Beyond the allegations satisfying all of the requirements of a *prima facie* case, the Court notes that the EEOC Decision on Request for Reconsideration, an attachment to the Complaint, states that Buck "filed an EEO complaint alleging that he was subjected to discrimination on the bases of race (African American) and age, when he was notified by letter dated January 11, 2013 that he was not selected for a Full-time Maintenance Worker (Vacancy Announcement #M-20512) position." EEOC Decision on Request for Reconsideration at 1, Compl. Ex. 1, ECF No. 1-1. Particularly when this distinct statement of Buck's claim is considered alongside the factual allegations in the Complaint itself, the Court concludes that the Complaint has adequately pleaded

9

claims of race and age discrimination. *See E.I. du Pont de Nemours and Co. v. Kolon Indus. Inc.*, 637 F.3d 435, 448 (4th Cir. 2011) (stating that "a court evaluates the complaint in its entirety, as well as documents attached or incorporated into the complaint" at the motion to dismiss stage).

### B.     Disparate Impact

The Motion to Dismiss also fails because while the Navy seeks dismissal of the entire Complaint for failure to state a claim, it has not provided any basis for dismissal of Buck's disparate impact theory of liability. Title VII prohibits race discrimination in employment under certain circumstances when there is conduct that is "not intended to discriminate but in fact [has] a disproportionately adverse effect on minorities (known as 'disparate impact')." *Ricci v. DeStefano*, 557 U.S. 557, 577 (2009). Under a disparate impact theory of liability, a plaintiff must show that an employer uses "a particular employment practice that causes a disparate impact on the basis of race," which the employer may defend by demonstrating that the practice in question is consistent with "business necessity." *Id.* at 578; *see* 42 U.S.C. § 2000e-2(k)(1)(A)(i). "[D]isparate impact analysis may in principle be applied to subjective as well as to objective practices," such as interviews and other discretionary selection processes. *Watson v. Fort Worth Bank & Tr.*, 487 U.S. 977, 991 (1988). As to Buck's age discrimination claim, although it is well established that, like Title VII, "the ADEA does authorize recovery in 'disparate-impact' cases," *see Smith v. City of Jackson*, 544 U.S. 228, 232 (2005), it is currently undecided in the United States Court of Appeals for the Fourth Circuit whether the ADEA's federal sector provision, 29 U.S.C. § 633a(a), permits a disparate impact cause of action for employees of the federal government such as Buck. *See DiCocco v. Garland*, 18 F.4th 406, 414 (4th Cir. 2021), *reh'g en banc granted*, No. 20-1342, 2022 WL 832505 (4th Cir. Mar. 21, 2022).

10

In the Complaint, Buck alleges a disparate impact claim when he asserts that the Navy used an employment practice in the selection process that "tested for skills that had nothing to do with [the] job," specifically, the written application and "verbal interview" components. Compl. at 6. Moreover, in the "Request for Reconsideration of Decision" attached to the Complaint, Buck specifically alleges a disparate impact claim under Title VII based on "a hiring criteria that may tend to screen out a minority group" and asserts that the hiring process's heavy weighting of "verbal and written skills for a job that does not require them" has a disparate impact on Black candidates of his age because of the "educational achievement gap between Black and White males" in the local schools in Calvert County, Maryland that currently exists and was "much wider" at the time that he went to school. Request for Reconsideration of Decision at 2-3. In support of this theory, Buck attached to the Complaint a 2016 report by the Remnant Center of Excellence on the educational achievement gap faced by Black students in Calvert County schools. *See* Compl. Ex. 3, ECF No. 1-3.

Where Buck has explicitly asserted a disparate impact claim and the Navy has not challenged the sufficiency of the allegations supporting that claim, the Court cannot and will not dismiss the Complaint under Rule 12(b)(6).

### III.    Motion for Summary Judgment

The Navy also argues that even if Buck's Complaint states a plausible claim for relief, it is entitled to summary judgment based on the factual record developed during the administrative proceedings. As discussed above, where Buck has not explicitly requested discovery, and in fact requests summary judgment in his favor, the Court may consider the summary judgment argument. *See supra* part I.B.

11

Buck alleges no direct evidence that the failure to promote him was the result of race or age discrimination. He therefore must establish his case through the *McDonnell Douglas* framework. As discussed above, the Complaint states a *prima facie* case, and the record evidence substantiates those allegations. There is no dispute that Buck is a member of a protected class as a Black man over age 40; that he applied, interviewed, and was considered for the full-time maintenance worker position; and that he was qualified in that he met the basic requirements as established by NRC Solomons through his prior experience as a flexible maintenance worker and his highly satisfactory performance reviews. Indeed, Buser, who was Buck's supervisor as well as a member of the hiring panel, agreed that Buck was "very capable and would be an outstanding employee," "based on all of the qualities [and] requirements in [the] job description." J.R. 399. There is also no dispute that the person hired for the position, Chad Conn, was from outside the protected classes, in that he is White and was under 40 years old. *See Carter*, 33 F.3d at 458–59 (holding that to satisfy the fourth prong, the plaintiff, who was African American, "need only show that the position was filled by a white applicant"). The Navy therefore argues that summary judgment is warranted because it has offered legitimate non-discriminatory reasons for the hiring decision and that Buck has not provided evidence of pretext.

### A.   Legitimate Non-Discriminatory Reason

Where Buck has met his burden to establish a *prima facie* case of discriminatory failure to promote, the burden shifts to the Navy to show a legitimate, non-discriminatory reason for the promotion decision. *See Hill*, 354 F.3d at 285. This burden is "only one of production, not persuasion." *Causey v. Balog*, 162 F.3d 795, 800 (4th Cir. 1998). Because this step "precedes the credibility-assessment stage," all that is required of the defendant at this point is the introduction of evidence which, if "*taken as true*, would *permit* the conclusion" that there was a non-

discriminatory reason "for the adverse action." *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 509 (1993).

The Navy asserts that the selection of Conn instead of Buck for the full-time maintenance worker position was based on his superior rating after interviews by the hiring panel consisting of Rose, Buser, and Ferguson. Specifically, the Navy points to the fact that Conn provided a typed application, a resume, and a list of references and scored highest among four candidates on the interview component of the application process, with a total score of 138 to Buck's score of 112. *See* J.R. 335. Although Conn lacked Buck's experience as a maintenance worker at NRC Solomons, during the administrative investigation Buser stated that the strongest point in favor of Conn was that he had attended trade school for heating, ventilation, and air conditioning work ("HVAC"), which was "a plus" to the hiring panel. J.R. 399. Ferguson recalled that Conn was "smartly dressed," "very prepared for his interview," "answered every question with detail and was very thorough," and was "by far the best candidate." J.R. 319. Rose explained the decision by stating that Conn "had an application that provided detailed work experiences and skill sets" and that he gave more "detailed verbal responses" than Buck in response to the same questions. J.R. 18. Buser noted that Conn had "provided an impressive resume that listed specialized skills" and "interviewed very well." J.R. 308.

Despite his long tenure with NRC Solomons and outstanding or highly satisfactory performance reviews as a flexible maintenance worker, the hiring panel gave Buck a comparatively low score. *See* J.R. 335. Unlike Conn, Buck provided a handwritten application and did not submit a separate resume and list of references as part of his application. Members of the panel criticized Buck's demeanor during the interview, with Rose stating that she perceived Buck as "apathetic" and acting "like he deserved the position," J.R. 296, and Ferguson stating that

13

he "was not a good candidate based on his responses, preparedness, [and] body language" and that Buck acted as if he "wanted to get the process over and done with as quick as possible." J.R. 319. Where the Navy's record evidence permits the conclusion that the hiring panel selected Conn based in significant part on the strength of his interview as compared to the other candidates, the Navy has identified a legitimate non-discriminatory reason for the selection of Conn. *See Hux v. City of Newport News*, 451 F.3d 311, 319 (4th Cir. 2006) (stating that "[i]nterviews are an important tool . . . and [the court] may not lightly overturn the reasonable conclusions an employer reaches after actually meeting with a candidate face-to-face.").

**B.      Pretext**

If the defendant makes a showing of a legitimate, non-discriminatory reason for the non-selection, the burden then shifts back to the plaintiff to show that the stated reason was a "pretext for discrimination." *Hill*, 354 F.3d at 285. The plaintiff ultimately bears the burden to show by a preponderance of the evidence that the defendant's explanations are "pretextual or otherwise unworthy of credence." *Henson v. Liggett Group, Inc.*, 61 F.3d 270, 275 (4th Cir 1995). "Although intermediate evidentiary burdens shift back and forth under [the *McDonnell Douglas*] framework, '[t]he ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff remains at all times with the plaintiff.'" *Reeves v. Sanderson Plumbing Products, Inc.*, 530 U.S. 133, 143 (2000) (quoting *Texas Dept. of Cmty. Affairs v. Burdine*, 450 U.S. 248, 253 (1981)). Thus, the Court must consider "the strength of the plaintiff's *prima facie* case, the probative value of the proof that the employer's explanation is false, and any other evidence that supports the employer's case and that properly may be considered" to determine whether judgment as a matter of law is appropriate. *Id.* at 148–49.

14

Here, even in the absence of discovery, Buck has identified issues of material fact on the issue of pretext. Although the Navy asserts that Buck filed only a one-page memorandum in opposition to the Motion, it ignores the 25 pages of attachments submitted by Buck which the Court construes liberally in light of Buck's self-represented status and the fact that discovery has yet to occur. First, Buck has submitted a statement disagreeing with the hiring panel and asserting that he performed "well" in responding to the 10 interview questions. J.R. 403. Buck also counters the claim that he had a poor attitude during the interview with his prior positive performance reviews, formal and informal, including one which details his "impeccable attitude," J.R. 385, and another highlighting his "stellar customer service [and] great attitude" following a customer review. J.R. 401. Particularly where the Navy's stated non-discriminatory rationale for Buck's non-selection is reliant on the hiring panel's claim of his comparatively poor demeanor, these facts are probative on Buck's claim that the stated reason was pretextual.

More importantly, Buck has submitted evidence that undermines the asserted reasons for selecting Conn. He has provided an excerpt of the EEOC hearing transcript in which Buser, who testified that the "strongest point" on Conn's application was his HVAC experience, acknowledged that Conn would not actually use such experience very much in the position because full-time maintenance workers at NRC Solomons are in fact "banned from doing HVAC work" on the grounds that such work is handled by unions pursuant to a contract. J.R. 399. Buck has also submitted undisputed evidence that Conn was interviewed over the telephone, which undermines the credibility of Ferguson's statement that one point in favor of Conn was that he was "smartly dressed" for the interview, a fact that Ferguson could not possibly have known. J.R. 319.

During the EEO investigation, Buck testified that Rose initially told him that the candidate who had outscored him on the interview "was retired military." J.R. 3. Buck has also submitted

documentation of an interview by the EEO investigator of Sean Lowthert, a co-worker who also applied for the full-time maintenance worker position, in which Lowthert asserted that although Rose had told Buck that Conn had been hired because he "had military preference over [Buck]," Conn had acknowledged that he was never in the military. J.R. 388, 393. In fact, as part of his application for the position that was presumably provided to Rose and the other members of the hiring panel, Conn checked "No" to Question 8 on his Declaration for Federal Employment asking whether he had ever "served in the United States Military." J.R. 301.

Further, Buck has also identified disputed facts on whether Conn received the interview questions significantly in advance of his interview as compared to the other candidates, who received them when they arrived for their in-person interviews. Although Rose has testified that Conn received the questions shortly before his telephone interview and thus had no unfair advantage, Buck asserts that Conn told him that he received the questions one hour before the interview. J.R. 396. During the EEO investigation, Buck also testified that he was not given "the same or ample time to prepare" for his interview as compared to the other candidates because he was informed that he had been selected for an interview the evening before his scheduled interview, while other candidates received more advanced notice. J.R. 7. To the extent that Conn may have been given an unfair advantage in the interview process, that fact would undermine the claim that Conn was the better candidate because of his responses to the interview questions and would thus support a claim of pretext. Notably, the Navy has not addressed these facts in any way. Where Buck has submitted evidence that Rose provided a false explanation for the hiring of Conn and that significantly undermines several of the asserted reasons for favoring Conn, he has identified genuine issues of material fact on the issue of whether the stated reasons for hiring Conn were pretextual. *See Dennis v. Columbia Colleton Medical Center, Inc.*, 290 F.3d 639, 647 (4th

Cir. 2002) (in upholding a jury verdict in favor of the plaintiff, stating that "[t]he fact that an employer has offered inconsistent post-hoc explanations for its employment decisions is probative of pretext").

Finally, Buck alleges a history of race and age-influenced "friends of friends" hiring at NRC Solomons and provides supporting interview statements from maintenance department co-workers, including James Butler, who stated that "[a]ll Whites that management wanted in certain positions were handed those positions." J.R. 394. Lowthert asserted that in the past, full-time maintenance positions were given to younger White applicants without interviews or competition, and that "since Carrie [Rose] has been director there have been two maintenance spots filed . . . . Both are young White males." J.R. 389. Indeed, Lowthert stated that another employee acknowledged that Conn was his friend, and Buck references a statement by a White employee bragging that he helped Conn get selected. In his addendum to the Joint Statement of Undisputed Facts, Buck also references various "racist acts" occurring under Rose's leadership, including use of racial epithets which he claims went unpunished by Rose. ECF No. 30 at 3-4. Indeed, the administrative judge's decision acknowledged "at a minimum, a perception of unfair hiring practices and racial tensions [at NRC Solomons] in the past," as well as "the use of the 'N' word" by certain personnel during Rose's period of leadership. J.R. 361-62. When these facts are combined with the identified facts showing inconsistencies and conflicting evidence relating to the hiring panel's explanations for failing to select Buck, the Court finds that Buck has identified "circumstantial evidence that otherwise undermines the credibility of the employer's stated reasons" so as to establish a genuine issue of material fact on pretext. *Heiko v. Colombo Savings Bank, F.S.B.*, 434 F.3d 249, 259 (4th Cir. 2006). Particularly where Buck has not had the

opportunity for discovery such that the factual record on these issues is incomplete, it is premature to grant summary judgment in favor of the Navy.

Although the Court will deny the Navy's Motion for Summary Judgment, it will not grant Buck's Cross Motion for Summary Judgment on the same issue. The question of whether the hiring panel's purported non-discriminatory reasons for selecting Conn instead of Buck are pretextual is inherently fact-based and requires discovery before a proper determination can be made by a factfinder.

## CONCLUSION

For the foregoing reasons, the Navy's Motion to Dismiss or, in the Alternative, for Summary Judgment will be DENIED. To the extent that Buck seeks summary judgement in his favor, his Cross Motion for Summary Judgment will also be DENIED. A separate Order shall issue.

Date: May 12, 2022

THEODORE D. CHUANG
United States District Judge